UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:13-CV-139-F

| | | |
|---|---|---|
| TODD D. GOODMAN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| JOHN and JANE DOES 1-10, and | ) | |
| LINDA LAGOY, | ) | |
| Defendants. | ) | |

This matter is before the court on a number of motions. The complaint [DE-1] alleges various defamation and unfair competition claims related to postings on www.localdirtbags.com and names the Defendants as "John and Jane Does." After filing the complaint, Plaintiff Todd Goodman ("Goodman") sent the summons and complaint to Aplus.net, the business name listed on www.localdirtbags.com (*hereinafter* "localdirtbags"). However, it turned out that Aplus.net was not responsible for the content on the website. Instead, Aplus.net apparently licensed its name and business address for use on the localdirtbags website, presumably because the actual website author wanted to conceal her identity. When Aplus.net received a copy of the summons and complaint, it forwarded the documents to Linda Lagoy, who has entered an appearance pro se in the instant action and admits that she is the website author. *See* Answer [DE-12] ¶¶ 20, 21, 29.

When Lagoy made her appearance, motions practice began in earnest. Lagoy immediately filed a "motion to dismiss and in the alternative motion for extension of time to file answer" [DE-7], alleging that Goodman failed to properly effect service under Rule 4 of the

Federal Rules of Civil Procedure. Goodman, in turn, observed that Lagoy's response was not timely and promptly filed a motion for entry of default [DE-8]. Subsequently (and before the court had ruled on either motion), Lagoy filed a "Motion to Dismiss, Answer, and Defenses" [DE-12]. This "motion" provides multiple arguments for dismissal, including an argument that Goodman's false advertising claim under the Lanham Act fails to state a claim upon which relief can be granted. The motion also provides a full answer to Goodman's complaint, including numbered responses corresponding to all 172 paragraphs of Goodman's 84-page complaint. All of these motions have been fully briefed and are ripe for disposition. For the reasons that follow, the second motion to dismiss [DE-12] is ALLOWED as to the Lanham Act claims and that claim is DISMISSED with prejudice. The court declines to extend supplemental jurisdiction over the remaining claims and those claims are also DISMISSED. The remaining motions are DENIED.

**FACTUAL BACKGROUND**

Goodman has been the target of an extraordinarily aggressive smear campaign on the localdirtbags website. Goodman, a licensed auto mechanic, owns and operates Affordable Transmissions, a general automotive and transmission repair shop in Raleigh, North Carolina. He also owns a number of similar automotive repair businesses in eastern North Carolina. The localdirtbags website is apparently devoted to ruining Goodman's personal and business reputation. The articles and associated comments allege that Goodman cheats customers by, among other things, rebuilding transmissions that do not need repair, refusing to fix substandard work without additional payment, and generally overcharging customers. In addition, the website posts various articles regarding Goodman's alleged criminal record and alleges that Goodman remains an incalcitrant criminal and extortonist.

2

The website is organized as a "blog" that contains various articles regarding Goodman and his associates and allows users to post comments below the articles. The articles themselves contain most of the factual content regarding Goodman's alleged deceptive business practices and alleged criminal activities. Goodman does not quote from the articles in the complaint, but he has attached the articles to the complaint and incorporated them by reference. The "Mike and Tiffany" article [DE-1-14, Ex. 13a] is representative. Goodman allegedly quoted a price of $800 to $1500 to "Mike and Tiffany" to rebuild the transmission in one of their vehicles. After saving up for a year, the couple returned to Affordable Transmission and Goodman's employees rebuilt the transmission. When Tiffany returned to retrieve the vehicle and pay for the work, Goodman allegedly charged her $2,300. Because the couple had anticipated a maximum price of $1,500 (which they had spent a year saving), Tiffany was forced to arrange a payment plan. Goodman allegedly required Tiffany to write out a check for $800, which he agreed not to cash if the couple made the monthly payments.

Tiffany noticed that the transmission was slipping after leaving the store. She returned to Affordable the next morning and an employee took the car for a test drive. The employee opined that nothing was wrong with the transmission and Tiffany left again. Shortly after leaving, the transmission fluid began leaking and Tiffany drove the car to a new mechanic, who informed her a seal was broken on the transmission. When Tiffany asked Goodman to make the necessary repairs, he asked for additional money. Tiffany and Mike apparently decided to take their business elsewhere at that point. However, the parade of horribles did not end. When the couple missed a payment on their $800 debt, Goodman allegedly cashed the (worthless) $800 check and "had the nerve to prosecute them for a bad check." [DE-1-14, Ex. 13a].

The remaining articles on the website either allege similar experiences with Goodman's businesses or denigrate his character directly. Their substance can be inferred from the titles: "Another Victim of Todd Goodman" [DE-1-7, -8, Ex. 7a, Ex. 7b]; "Your Neighbor the Felon" [DE-1-3, Ex. 3]; "Goodman's Conviction for Extortion" [DE-1-10, Ex. 9]; "Victim of Todd Goodman" [DE-1-12, Ex. 11]. Each of these articles (and others) are attached to Goodman's complaint and incorporated by reference.

Goodman's complaint also contains numerous quotations from the "comments" sections underneath the articles. Because the substantive content of these postings is significant to the analysis below, the court will recite some representative samples of the comments on the website. In doing so, the court emphasizes that none of these statements (or the articles), to the extent they allege facts at all, are supported by any evidence at this stage of the proceedings. As quoted in Goodman's complaint, the localdirtbags website contains the following allegations:

> Hey, Toddy [Goodman]! Why don't you give up on the lying . . . all the years you have been doing it should have made you better at it, instead it has just made YOU a complete idiot! . . . You are such scum! I hope you get everything you deserve.
> . . . .
>
> LET'S CALL IT WHAT IT IS! THE GUY IS SCUM! LOWER THAN SNAIL POOP! NOT SURE WHY YOU PEOPLE ARE BEATING AROUDN (sic) THE BUSH ABOUT IT. HE'S A LOWLIFE, CRIMINAL PUKE!!!!!!! aNYONE THAT PICKS ON WOMEN AND MARINES DURING WAR TIME.. YOU CAN'T GET LOWER THAN THAT!!!! i'VE GOT PLENTY OF ROPE, LET'S HANG HIM AND BE DONE WITH THIS BS!!!!!!!!!!!!!!!!!
> . . . .
>
> YEAH IT TAKES A REAL TOUGH GUY TO TAKE ADVANTAGE OF WOMEN, SENIOR CITIZENS AND MARINES ON DEPLOYMENT. NOTE TO TODD GOODMAN: MARINES, WOMEN AND SENIORS HAVE RELATIVES THAT AIN'T GOIN' NOWHERE. CAN'T WAIT TO MEET YA!
> . . . .

4

> I am sure that Todd [Goodman] had a good Christmas as he had every dollar of his victim's money, but the couch that will fry him he will soon sit, keep this website going. For those of you that haven't been around very long, my view is "get rid of the electric chair and buy a couch; that way we can fry 3 dirtbags at once." Peace to ALL and Happy New Year to you and yours.

Compl. [DE-1] ¶¶ 51(a), 54(b), 63(c), 63(h) (capital letters and errors in original).

In addition, Goodman alleges that the website author herself posted most of the comments associated with the articles under various pseudonyms and that any comments that reflect positively on Goodman's auto repair businesses are immediately deleted. As discussed above, Linda Lagoy has entered a notice of appearance pro se in this matter and she admits that she is the website creator and author of many of the articles. As of March 25, 2014, the website remains operational. *See Local Dirtbags*, http://www.localdirtbags.com (last visited March 25, 2014).

## DISCUSSION

**A. Standard of Review**

Lagoy has filed a motion to dismiss Goodman's Lanham Act claim under Federal Rule of Civil Procedure 12(b)(6).[1] The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the

---

[1] Goodman argues the court should not consider Lagoy's motion to dismiss because she failed to answer or otherwise defend within twenty-one days of Goodman filing the complaint. *See* Fed. R. Civ. P. 12(a). Goodman also requests that the court enter default against Lagoy for failing to respond within the proper time frame. The court notes that Lagoy appeared (and filed a responsive pleading) approximately thirty days after Goodman served Aplus.net. A nine-day delay in filing her motion to dismiss/request for extension of time does not warrant the drastic sanction of default. And even if the court entered default in this case, Goodman would still be required to show how the factual allegations in the complaint state a claim for relief to obtain a default judgment. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). As discussed below, Goodman cannot do that, at least as to the Lanham Act claim, which provides the jurisdictional basis for this action. Goodman's motion for entry of default is therefore DENIED.

5

Case 4:13-cv-00139-F   Document 20   Filed 03/28/14   Page 5 of 16

action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). While the court accepts the factual allegations as true, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" when deciding a Rule 12(b)(6) motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B. Lanham Act Claim**

The Lanham prohibits, among other things, the "use[] in commerce [of] any . . . false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . ." 15 U.S.C. § 1125(a)(1)(B). Although Goodman variously denominates his Lanham Act claim as a "false designation of origin" or "false representation" claim, in reality he brings a claim for false advertising. Goodman's allegations precisely track the Lanham Act language, quoted above, that allows for civil claims for false advertising.[2] *See*

---

[2] The court also notes that Goodman does not allege any facts that could potentially make this a false designation of origin case. False designation of origin requires that a defendant obtained physical goods from a plaintiff, repackaged the unaltered goods, and sold them under the defendant's name. *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31 (2003). None of Goodman's factual allegations suggest the Doe Defendants obtained products from Goodman and resold them under [cont.]

6

Compl. [DE-1] ¶¶ 102-111 ("Doe Defendants misrepresented the nature, characteristics, and qualities of Plaintiff's services and commercial activities in connection with the commercial advertising and promotion of Doe Defendants' services and products."). A Lanham Act false advertising claim may proceed when a plaintiff sufficiently alleges:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*PBM Prods. LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011); *Scotts Co. v. United Indus.*, 315 F.3d 264, 272 (4th Cir. 2002); *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310-11 (1st Cir. 2002). Although the Fourth Circuit has not defined the term "commercial advertisement," several circuit courts and district courts within the Fourth Circuit have adopted the four-part test from *Gordon & Breach Science Publishers v. American Institute of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994). *See, e.g.*, *Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, Inc.*, 332 F.3d 6, 19 (1st Cir. 2003); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003); *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th

---

their names. The court is not aware of any "false representation" causes of action under the Lanham Act, except to the extent a false representation that occurs in the context of false association or false advertising is actionable. The Lanham Act provides for two bases of liability: false association and false advertising. *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992). Nothing in the plaintiff's complaint suggests that the website created consumer confusion regarding the affiliation or association of Goodman's trademark with the website postings, as would be required to maintain a false association claim. 15 U.S.C. § 1125(a)(1)(A).

7

Cir. 2000); *Design Res., Inc. v. Leather Indus. of Am.*, 900 F. Supp. 2d 612, 619-20 (M.D.N.C. 2012).

Under the *Gordon & Breach* test, a particular statement is only "commercial advertisement or promotion" where it is "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services [and the representations must be] (4) disseminated sufficiently to the relevant purchasing public." *Boykin Anchor Co. v. AT&T Corp.*, 825 F. Supp. 2d 706, 710 (E.D.N.C. 2011) (quoting *Gordon & Breach*, 859 F. Supp. at 1535-36); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 572 (E.D. Va. 2004). Commercial speech, in turn, is "speech that does no more than propose a commercial transaction[,]" *United States v. Edge Broad. Co.*, 509 U.S. 418, 426 (1993), or speech "related solely to the economic interests of the speaker and its audience." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993).

Courts have also looked to the legislative history of the Lanham Act for guidance on the definition of commercial speech. *See Gordon & Breach*, 859 F. Supp. at 1533; *Wojnarowicz v. Am. Family Ass'n*, 745 F. Supp. 130, 141-42 (S.D.N.Y. 1990). For example, in discussing the purposes of the amendment adding the false advertising cause of action to the Lanham Act, Representative Kastenmeier stated:

> Under this proposed change only false or misleading "advertising or promotion" would be actionable, whether it pertained to the advertiser itself or another party. The change would exclude all other misrepresentations from section 43(a) coverage. These others are the type which raise free speech concerns, such as a Consumer Report which reviews and may disparage the quality of . . . products, [and] misrepresentations made by interested groups which may arguably disparage a company and its products . . . . All of these would be judged by first amendment

8

law . . . and not section 43(a) law . . . .

[T]he proposed change in section 43(a) should not be read in any way to limit political speech, consumer or editorial comment, parodies, satires, or other constitutionally protected material . . . . The section is narrowly drafted to encompass only clearly false and misleading commercial speech.

135 Cong. Rec. H1216-17 (daily ed. April 13, 1989); *see also* 134 Cong. Rec. 31,851 (Oct. 19, 1988) (statement of Rep. Kastenmeier) (explaining the reach of the false advertising claim embodied in § 1125(a)(1)(B) "specifically extends only to false and misleading speech that is encompassed within the 'commercial speech' doctrine developed by the United States Supreme Court."). Summarizing this legislative history, the Southern District of New York has noted, "[The Lanham Act] has never been applied to stifle criticism of the goods or services of another by one, such as a consumer advocate, who is not engaged in marketing or promoting a competitive product or service."[3] *Wojnarowicz*, 745 F. Supp. at 141-42.

Here, Goodman has failed to sufficiently allege that these internet postings constitute commercial speech or that they were made "by a defendant in commercial competition with plaintiff." *Gordon & Breach*, 859 F. Supp. at 1535-36. The complaint contains two allegations related to the commercial interests of the Doe Defendants. The first is a legal conclusion that the

---

[3] Likely in response to these observations, an intricate body of law developed around the so-called "prudential standing" requirements a plaintiff must satisfy to bring a false advertising Lanham Act claim. *See, e.g.*, *Nemet Chevrolet, LTD. v. Consumeraffairs.com*, 564 F. Supp. 2d 544, 551-53 (E.D. Va. 2008) (describing various approaches to prudential standing used in the Circuit Courts of Appeals in false advertising cases). In one fell swoop, the Supreme Court recently abrogated essentially all of the prudential standing doctrine related to false advertising. *See Lexmark Intern. Inc. v. Static Control Components, Inc.*, No. 12-873, 572 U.S. ___ (March 25, 2014). The court notes that the Supreme Court did not address whether "Static Control's allegations failed to describe 'commercial advertising or promotion . . . .'" Slip Op. at 4 n.1 ("That question is not before us, and we express no view on it."). Accordingly, the court applies the standard test described above for determining whether a statement constitutes commercial advertising or promotion, which has been adopted by numerous circuit courts throughout the country and has been in existence since 1994.

9

postings and articles represent "commercial activities in connection with the commercial advertising and promotion of Doe Defendants' services and products,"[4] Compl. [DE-1] ¶ 103. The court is not required to credit legal conclusions when deciding a motion to dismiss. *Twombly*, 550 U.S. at 555 (explaining, "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted)). The only factual allegation related to the Defendants' commercial interest in the website is contained in paragraph 104: "[u]pon information and belief, Doe Defendant who registered and operates localdirtbags.com engages in the conduct alleged in this Complaint in order to drive traffic to the blog, and increase the monetary value of the blog, in a collective effort to promote and sell the blog to a third party." Compl. [DE-1] ¶ 104.

This allegation is plainly insufficient to state a false advertising claim. That the Defendant operator[5] published the articles and comments in an effort to make the website attractive for sale to third-parties is not sufficient to bring these postings within the commercial speech doctrine. The allegation could be made about any website. If a person creates a website in which he posts videos of kittens in various entertaining endeavors with the aim of ultimately making the website attractive to third-party purchasers, surely the videos themselves would not constitute speech that "does no more than propose a commercial transaction[,]"or that is "related solely to the economic interests of the speaker and its audience." *Edge Broad.*, 509 U.S. at 426;

---

[4] The paragraph is simply a recitation of the statutory language. *See* § 1125(a)(1)(B) (prohibiting false representations "in commercial advertising or promotion . . . of [the defendant's or another's] goods, services, or commercial activities.").

[5] The complaint also fails to address the commercial interests of any of the other doe defendants, other than the legal conclusion in paragraph 103.

10

Case 4:13-cv-00139-F   Document 20   Filed 03/28/14   Page 10 of 16

*Discovery Network*, 507 U.S. at 422. As the plain language of *Edge Broadcasting* and *Discovery Network* makes clear, the content of the speech itself is the significant factor in the commercial speech analysis.

Other than the allegation that the website author has a commercial interest in visits to her website, the complaint utterly fails to allege any commercial interest in the actual content of any of the articles or comments. Nor can the court draw a reasonable inference in Goodman's favor on this issue. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."). As can be seen from even a cursory review of the comments and articles discussed above, the statements do not propose a commercial transaction in any traditional sense of that phrase and the court cannot reasonably infer that the statements relate solely to the speaker and his audience's economic interests.[6] *See, e.g.*, Compl. [DE-1] ¶ 51(a) ("Hey, Toddy [Goodman]! Why don't you give up on the lying . . . all the years you have been doing it should have made you better at it, instead it has just made YOU a complete idiot!"), ¶ 63(c) ("NOTE TO TODD GOODMAN: MARINES, WOMEN AND SENIORS HAVE RELATIVES THAT AIN'T GOIN' NOWHERE. CAN'T WAIT TO MEET YA!"). In sum, while the articles and comments may support a claim for defamation, they do not plausibly constitute commercial speech. *See Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1060-62 (D. Colo. 2012) ("While [allegations regarding internet postings criticizing another's work] might state a claim for defamation, [the complaint] does not plausibly allege the

---

[6] The court acknowledges that it is possible (although not plausible) that some of these postings come from Goodman's competitors, which potentially suggests the statements are related solely to the economic interests of at least the speaker. The court addresses this issue below.

advertising of a product or service sold by [the defendant]."); *Nemet Chevrolet*, 564 F. Supp. 2d at 554-55 (finding consumer reviews posted on internet did not constitute commercial advertising or promotion under *Gordon & Breach* factors).

The complaint also fails to allege that any of these articles or comments come from Goodman's competitors, who would have an economic interest in disparaging Goodman's businesses.[7] *See Gordon & Breach*, 859 F. Supp. at 1535-36 (requiring that statement come from a defendant who is in commercial competition with plaintiff to constitute commercial advertisement or promotion). Instead, the complaint contains numerous quotations from anonymous posters on the website, and leaves it to the court to draw inferences regarding whether these postings come from Goodman's competitors. The court finds that it cannot draw a reasonable inference in Goodman's favor on this issue. As noted above, the tenor of each of these comments reflect consumer reviews by parties with no commercial interest in the postings themselves. Goodman essentially concedes as much by alleging that the Defendants' commercial interest in this case is in driving traffic to the website, not diverting business from Goodman to his competitors. *See Nemet Chevrolet*, 564 F. Supp. 2d at 554 ("Defendant is not in commercial competition with Plaintiffs. This would in turn prevent a finding that the representations at issue

---

[7] The viability of the second factor of the *Gordon & Breach* test is somewhat in question after the *Lexmark* decision. In *Lexmark*, the Supreme Court held direct competition between the plaintiff and defendant is not required for a plaintiff to have standing to bring a false advertising claim. *See Lexmark*, slip op. at 18 ("It is thus a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false-advertiser's direct competitors."). The Court also noted that "[b]y the time the Lanham Act was adopted, the common law tort of unfair competition was understood not to be limited to actions between competitors." *Id.* at 17. This court does not read the Supreme Court's statements to authorize suit against consumers for web postings like the ones at issue in this case. As explained, the complaint fails to allege any reasonable commercial interest in the content of the postings. Surely *Lexmark* is not to be read to eliminate the word "commercial" from "commercial advertising and promotion." § 1125(a)(1)(B).

constitute commercial advertising."); *Wojnarowicz*, 745 F. Supp. at 141-42 ("[The Lanham Act] has never been applied to stifle criticism of the goods or services of another by one, such as a consumer advocate, who is not engaged in marketing or promoting a competitive product or service.").

The court acknowledges that this issue is complicated by the fact that Goodman does not know the identities of the defendants at this stage of the proceedings. Indeed, the cases the court has uncovered in which internet postings did not constitute commercial advertising or promotion involved defendants whose identities were known and where it was obvious that the plaintiff and defendant were not in commercial competition with each other. *See Shell*, 899 F. Supp. 2d at 1060-62; *Boykin Anchor Co.*, 825 F. Supp. 2d at 709-11; *Nemet Chevrolet*, 564 F. Supp. 2d at 546. It is possible that some of the Doe Defendants are commercial competitors of the plaintiff who have decided to post negative comments in an effort to drive business away from Goodman. *See NTP Marble Inc. v. AAA Hellenic Marble, Inc.*, 2012 WL 607975, at *1 (E.D. Pa. Feb. 27, 2012) (false advertising claim proceeded when discovery revealed competitors were responsible for negative reviews on consumer review websites). As explained above, however, the court finds that this is not a plausible inference given the content of the statements. In addition, the court has reviewed all of the numerous statements in this complaint and none of them outright encourage the readers to take their business to a specific competitor. Although in general a commercial advertisement under the Lanham Act does not need to contain a business solicitation, *see Neuros Co. Ltd. v. KTurbo, Inc.*, 698 F.3d 514, 522 (7th Cir. 2012), the fact that no competitor solicitations occur in any of the numerous postings on the website cuts against any potential inference that these postings come from competitors. *Compare NTP Marble*, 2012 WL

13

607975, at *7 (denying motion for summary judgment on false advertising claim despite absence of outright business solicitations where evidence suggested economic motivation for internet reviews).

To summarize, the court finds that Goodman has not sufficiently alleged that these articles and comments constitute commercial advertising or promotion under the *Gordon & Breach* factors. The complaint's only allegation regarding the Defendants' commercial interest in the website is not sufficient to satisfy the commercial speech doctrine. In addition, the facts alleged in the complaint do not allow the court to draw a reasonable inference that these comments come from defendants who have a commercial interest in disparaging Goodman's reputation. Accordingly, the court finds that the complaint fails to state a false advertising claim, and count one is therefore DISMISSED.[8]

**C. Supplemental Jurisdiction over State Law Claims**

The court's jurisdiction in this action is predicated on original jurisdiction over the Lanham Act claim, and supplemental jurisdiction over the remaining state law claims. 28 U.S.C.

---

[8] The court declines to allow Goodman an opportunity to file an amended complaint attempting to assert a Lanham Act claim. Specifically, the court is concerned about allowing the false advertising claim to proceed in the context of this particular case. As explained above, these comments appear to be non-actionable consumer review comments. Allowing leave to amend on the remote possibility that discovery will reveal that Goodman's competitors are responsible for the postings would allow a plaintiff to maintain a false advertising claim against virtually any website that allows users to post negative online reviews. Mindful of the limited jurisdiction of the federal courts, the court is concerned about setting a precedent where a plaintiff can manufacture federal jurisdiction on the questionable allegations presented by these particular facts. In contrast, if the court were presented with a case where a plaintiff has a good faith belief that the anonymous posters were competitors, *NTP Marble*, 2012 WL 607975, at *1, the court would be open to allowing this claim to proceed. Goodman's failure to allege any legitimate commercial interest in the internet postings in the original complaint, along with the content of these particular postings, counsels against allowing leave to amend in these circumstances. Nevertheless, nothing in this ruling precludes Goodman from later asserting a Lanham Act claim, should he become aware of facts which cause him to have a good faith belief that the anonymous posters were competitors.

§ 1367(a). However, because the court is dismissing Goodman's federal claim, it may decline to exercise supplemental jurisdiction over Plaintiff's other claims. 28 U.S.C. § 1367(c)(3); *see Hunt v. Branch Banking & Trust Co.*, 480 F. App'x 730, 732 (4th Cir. 2012). In this regard, the Supreme Court has stated that, when "federal claims are dismissed before trial . . . state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The court has considerable discretion in deciding whether to extend supplemental jurisdiction. *Hunt*, 480 F. App'x at 732. In this case, the court declines to extend supplemental jurisdiction over Goodman's state law claims, and they are DISMISSED without prejudice. Pursuant to 28 U.S.C. § 1367(d), the period of limitation for any supplemental claim shall be tolled while the claim is pending in federal court and for a period of 30 days after it is dismissed.

### D. Rule 8 Issues

Finally, the court notes that it considered dismissing this complaint for failure to follow Rule 8 of the Federal Rules of Civil Procedure. The eighty-four page complaint consists primarily of lengthy block quotations from the localdirtbags website. After sixty-one pages of quotations from the website, the reader is finally informed of the first claim for relief on page sixty-two. And even within the claims for relief, there are numerous instances of additional (and repetitive) block quotations from the website. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Although the court recognizes that the new pleading standards under *Twombly* and *Iqbal* require more factual allegations than may have been previously necessary, there is nothing short or plain about this complaint. Counsel is forewarned that future complaints like this may be subject to summary dismissal for failure to follow Rule 8.

15

## CONCLUSION

In summary, Lagoy's motion to dismiss the Lanham Act claim [DE-12] is ALLOWED and the Lanham Act claim is DISMISSED with prejudice. The court declines to extend supplemental jurisdiction over the remaining claims in this lawsuit, and the complaint is DISMISSED. The first motion to dismiss [DE-7] is DENIED as moot, and the motion for entry of default [DE-8] is DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This the 28th day of March, 2014.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge